George DEUTSCH, Appellant,

v.

HOOVER, BAX & SLOVACEK, L.L.P., Appellee.

No. 14–00–01459–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 27, 2002.

Rehearing Overruled Jan. 30, 2003.

Melvin L. Smith, Jr., Houston, for appellants.

Larry Huelbig, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices ANDERSON and FROST.

## MAJORITY OPINION

KEM THOMPSON FROST, Justice.

The dispute in this case arose out of the attorney-client relationship between appellee Hoover, Bax & Slovacek, L.L.P. and its former client, appellant George Deutsch. The client challenges the trial court's judgment awarding attorney's fees to the law firm based on unpaid legal bills and ordering that he take nothing on his counterclaims against the law firm and the individual attorney who handled his file. We conclude the trial court erred in granting a

directed verdict against the client as to his claim for fee forfeiture based on alleged breaches of fiduciary duty relating to the law firm's conflicts of interest. Accordingly, we reverse and remand this case to the trial court for a jury trial on the disputed fact issues regarding this claim and for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Deutsch, a New York real estate investor, had an interest in several partnerships owning property in the Houston area, including Dan–333 Associates ("Dan–333") and Kirkwood Atrium Associates. Several of Deutsch's partners filed for bankruptcy in Delaware in 1993, and Deutsch represented himself for over a year in those proceedings. In 1994, in an effort to buy a Houston building being sold by one of the partnerships, Deutsch retained the law firm of Hoover, Bax & Slovacek, L.L.P. (the "Law Firm") to help him "get the attention" of the bankruptcy trustee. At Deutsch's request, the Law Firm sought an injunction in state district court in Houston to prevent the sale of the building. As part of that injunction proceeding, Deutsch, represented by the Law Firm, claimed the bankruptcy trustee had no authority to sell the building because the bankruptcy estate included only partnership interests rather than the building itself. The bankruptcy trustee responded with an adversary proceeding against Deutsch and the Law Firm in the Delaware bankruptcy case. All issues in Delaware were tried in 1994, but the bankruptcy court did not issue a final order until January 1998. In that final order, the bankruptcy court assessed $75,000 against Deutsch for embezzlement, awarded him $300,000 in commissions, confirmed some of his partnership interests, and absolved him of any personal liability on a purported breach of promise to purchase the Houston building.

Meanwhile, in August 1997, the Law Firm sued Deutsch for unpaid legal bills of more than $67,000. In November 1998, Deutsch filed a counterclaim against the Law Firm, and in the same proceeding, also asserted claims against David Waddell, the Law Firm attorney who had handled his file. Deutsch alleged negligence, breach of contract, breach of fiduciary duty, negligent misrepresentation, violations of the Deceptive Trade Practices Act ("DTPA"), and fraud.

After the close of all the evidence at trial, the Law Firm moved for a directed verdict on various grounds, including statute of limitations. Because the Law Firm had not asserted limitations as an affirmative defense in its pleadings, the Law Firm also sought leave to amend its answer to assert the statute-of-limitations defense. The trial court granted the Law Firm's motion for leave and also granted its motion for directed verdict.[1] The trial court

---

1. There is a potential nomenclature problem in the cases caused by the fact that a "legal malpractice claim" might be thought of by some as any claim brought by a client against that client's attorney. However, when cases refer to "legal malpractice" or "a legal malpractice claim," often they are referring to a negligence claim in which the issue is whether the attorney exercised that degree of care, skill, and diligence as attorneys of ordinary skill and knowledge commonly possess and exercise. *See Goffney v. Rabson*, 56 S.W.3d 186, 190 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). To avoid confusion, in this opinion a claim that the attorney did not exercise that degree of care, skill, and diligence as attorneys of ordinary skill and knowledge commonly possess and exercise is referred to as a "negligence claim" rather than as a "legal malpractice claim." Further, we use the term "legal malpractice" to refer to any claim brought by a client against that client's attorney, regardless of whether the claim asserts negligence, fraud, breach of fi-

indicated that the statute of limitations barred all of Deutsch's claims except for his negligence claim.[2] The trial court then submitted the case to the jury in two broad-form questions, asking: (1) What fees (if any) Deutsch owed the law firm? and (2) Whose negligence (if any) proximately caused injury to Deutsch? The jury found Deutsch's own negligence caused his injuries, and awarded the Law Firm $61,055.95 for unpaid bills, plus attorney's fees incurred in bringing the collection suit. Deutsch appeals from this judgment as to the Law Firm only.

## II. ISSUES PRESENTED

Challenging the judgment in favor of the Law Firm, Deutsch raises the following issues:

- Did the trial court err in granting the Law Firm leave to file a supplemental answer asserting a statute-of-limitations defense? (second issue)

- Did the trial court err in granting the Law Firm's motion for directed verdict as to Deutsch's breach-of-fiduciary-duty claim, including Deutsch's claim for fee forfeiture? (first and seventh issues)

- Did the trial court err in refusing Deutsch's requested jury questions regarding the alleged defenses of misrepresentation, legal excuse for breach of contract, and breach of fiduciary duty? (third, fourth, and fifth issues)

- Did the trial court err in granting the Law Firm's motion for directed verdict as to Deutsch's claim for exemplary damages? (sixth issue)

- Did the trial court err in granting the Law Firm's motion for directed verdict as to Deutsch's claims for breach of contract and attorney's fees? (eighth, ninth, and tenth issues)

## III. ANALYSIS

### A. Did Deutsch waive his right to a new trial and did the trial court err by allowing the Law Firm to plead limitations during trial?

■ As an initial matter, the Law Firm argues that all of Deutsch's omitted jury issues are barred by a limitations ruling to which he has waived any appeal. After all parties rested at the end of four days of evidence, the Law Firm moved for directed verdict on various grounds, one of which was limitations. When Deutsch objected that the Law Firm had not pleaded limitations, the trial court granted the Law Firm leave to amend, and granted Deutsch's ensuing motion to amend to plead the discovery rule. On its own motion, the trial court also offered to declare a mistrial; Deutsch declined this offer because of the expense involved in retrying the case.

■ On appeal, the Law Firm argues Deutsch's refusal to accept a mistrial constitutes waiver—that he cannot take a peek at the verdict and then ask for the new trial that he earlier refused. Neither party has identified any case directly on point. Texas Rule of Civil Procedure 66, governing trial amendments, suggests a postponement may cure any prejudice from a trial amendment. *See* TEX.R. CIV. P. 66 (stating court may grant a postponement to enable the objecting party to meet

duciary duty, breach of contract, or any other allegation.

2. On appeal, neither party asserts that our review of the trial court's directed verdict is limited to only the statute-of-limitations ground, and we consider all grounds raised by the Law Firm in its motion for directed verdict.

trial amendment). But there is nothing in the rule to suggest an offer of a mistrial does so, especially when the trial is virtually completed. A party seeking leave to amend its pleadings after the trial has commenced should not be rewarded by forcing the judge, jury, and opposing party to either acquiesce in the tardy amendment or start over. In this case, the mistrial was the trial court's suggestion; the Law Firm never agreed to it, and certainly never offered to pay Deutsch's expenses to try the case a second time. Deutsch's decision to refuse the trial court's offer of a mistrial did not amount to a relinquishment of his objection. Accordingly, we hold Deutsch did not waive his complaint concerning the trial amendment.

■ In addressing the merits of Deutsch's complaint that the trial court erred in granting the Law Firm leave to file a trial amendment, we begin by making two critical observations: (1) this issue involved questions of surprise and prejudice, and (2) Deutsch objected. Under these circumstances, we review the trial court's ruling for an abuse of discretion. *See* Tex.R. Civ. P. 63, 66; *Hardin v. Hardin*, 597 S.W.2d 347, 350–51 (Tex.1980). In making this determination, we focus on the nature of the amendment and the prejudice, if any, that would result from allowing an amendment. An amended pleading asserting a new defense is not prejudicial as a matter of law; the amendment must be evaluated in the context of the entire case. *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 839 (Tex.App.–Houston [14th Dist.] 2000, pet. denied). To prevail, Deutsch must show the Law Firm's amended answer (1) reshaped the nature of the trial; (2) could not have been anticipated; and (3) prejudiced his presentation of the case. *See id.*

In each part of his pleading for affirmative relief, Deutsch made the same claims against the Law Firm and Waddell. The Law Firm did not assert a limitations defense, but Waddell did. Consequently, Deutsch had notice of the issues likely to arise with respect to this defense. For this reason, it would be difficult to characterize the limitations defense as one that reasonably could not have been anticipated. Although Deutsch's counsel claimed both surprise and prejudice in general terms, he did not indicate how the trial was unexpectedly changed when the Law Firm merely sought to add a defense already raised by the individual attorney. We find Deutsch could not have been surprised or prejudiced by the trial amendment. *See id.; Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990) (requiring party opposing amendment to present evidence of surprise or prejudice). Accordingly, we hold the trial court did not err in granting the trial amendment, and we overrule Deutsch's second issue.

**B. Did the trial court err in granting the Law Firm's motion for directed verdict as to Deutsch's breach-of-fiduciary-duty claim, including Deutsch's claim for fee forfeiture?**

In his first and seventh issues, Deutsch asserts the trial court erred in directing a verdict against him as to his breach-of-fiduciary-duty claim, including his claim for fee forfeiture. On appeal, the Law Firm no longer presses limitations, perhaps because there was conflicting evidence as to when Deutsch discovered these claims or because of the common-law tolling rule for clients' claims against their attorneys. *See Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 119 (Tex.2001) (holding that, when an attorney commits legal malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on a legal-malpractice claim

against that attorney is tolled until the terminal point of the underlying litigation); *Szczepanik v. First Southern Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994). However, in its motion for directed verdict, the Law Firm asserted other grounds for directed verdict as to Deutsch's breach-of-fiduciary-duty claim: (1) no evidence of breach of fiduciary duty, (2) impermissible fracturing of a negligence claim, and (3) no damages.

■ In reviewing the trial court's granting of a directed verdict, we must determine whether there is any evidence of probative force to raise a fact issue on the material questions presented. *Szczepanik*, 883 S.W.2d at 649. We consider all of the evidence in the light most favorable to the party against whom the verdict was directed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence. *Id.* If there is any conflicting evidence of probative value, a directed verdict is improper and the case must be reversed and remanded for jury determination of that issue.[3] *Id.*

In his petition, Deutsch alleged that the Law Firm breached its fiduciary duty by taking the following actions for its own benefit:

(1) misrepresenting the Law Firm's billing procedures;

(2) failing to counsel and advise Deutsch about the conflicts of interest which arose during the Law Firm's representation of Deutsch in his Texas state court action and in the adversary proceeding in Delaware;

(3) failing to withdraw from representation of Deutsch once the conflicts arose;

(4) failing to advise Deutsch to retain separate counsel, in light of the Law Firm's conflicts of interest in representing Deutsch;

(5) failing to counsel and advise Deutsch about the purpose and effect of the indemnity language contained in his engagement letter with the Law Firm;

(6) failing to counsel and advise Deutsch about the ramifications of filing his state court action in violation of the bankruptcy stay and injunction;

(7) failing to confer with Deutsch before misrepresenting to the bankruptcy court that Deutsch had agreed to purchase the Kirkwood Atrium III building, with no contingencies for financing;

(8) failing to counsel and advise Deutsch regarding the ramifications of making representations on the record during the bankruptcy case;

(9) failing to counsel and advise Deutsch regarding the nature of the contested matters in the adversary proceeding and Deutsch's potential liability for same;

(10) failing to conduct any discovery in the adversary proceeding;

(11) failing to call witnesses at the trial of the adversary proceeding who could have provided testimony in support of Deutsch;

---

**3.** This is the controlling standard of review. The dissent creates a hybrid, discretionary standard of review to determine whether the trial court erred in granting directed verdict— "Our only role is to decide whether, viewing all the evidence in Deutsch's favor, no reasonable trial judge could have denied fee forfeiture." *See post,* op. at p. 203–04 (concurring and dissenting opinion). The dissent's standard of review is incorrect and not supported by precedent. *See Burrow v. Arce,* 997 S.W.2d 229, 237–46 (Tex.1999); *Szczepanik v. First Southern Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994); *see also R.R. Street & Co., Inc. v. Pilgrim Enterprises, Inc.,* 81 S.W.3d 276, 303–05 (Tex.App.-Houston [1st Dist.] 2001, pet. filed) (using traditional directed-verdict standard of review to conclude directed verdict should be reversed and stating that the court's analysis is the same analysis that would be used in fee-forfeiture case under *Burrow* ).

(12) failing to file any counterclaims on behalf of Deutsch and/or TriState in the adversary proceeding;

(13) failing to represent Deutsch after receiving an assignment of a portion of Deutsch's ownership interests for financing;

(14) failing to represent Deutsch in an appeal of the adversary proceeding; and

(15) revealing matters to the opposing party in the adversary proceeding that were adverse to Deutsch's position.

### 1. Was there legally sufficient evidence the Law Firm misrepresented its billing procedures and revealed matters to the opposing party in the adversary proceeding that were adverse to Deutsch's position?

In items (1) and (15) above, Deutsch alleged that the Law Firm misrepresented its billing procedures and revealed matters to the opposing party in the adversary proceeding that were adverse to Deutsch's position. We conclude that there was no legally sufficient evidence at trial to support a breach-of-fiduciary-duty claim based on these two allegations.

There was evidence that Deutsch struck out provisions of the Law Firm's proposed engagement letter which stated that the Law Firm would record its time in quarter-hour increments and that it might bill in excess of the fees reflected by its hourly billing rates. David Waddell testified that he told Deutsch these changes to the engagement letter were acceptable, that he understood the Law Firm was only to bill for actual time worked, and that the Law Firm billed only for actual time worked. Waddell also stated that he did not have a specific conversation with Deutsch about the items that he struck out and that, prior to the filing of Deutsch's counterclaim against the Law Firm, Deutsch never complained to Waddell about the Law Firm's billing Deutsch in quarter-hour increments. Joseph Bax, a partner at the Law Firm, testified that the Law Firm's accounting system was incapable of recording time in any units other than quarter-hour increments. Bax also stated that, if a client had insisted that the Law Firm not bill in quarter-hour increments, then he would have referred the client to other counsel.

Deutsch has not cited, and we have not found, any evidence in the record or reasonable inference therefrom that would support a finding that the Law Firm misrepresented its billing procedures to Deutsch. Even if Waddell agreed that the Law Firm would bill for the precise amount of time worked, rather than in quarter-hour increments, this would only go to the Law Firm's agreement with Deutsch; it would not be evidence that the Law Firm misrepresented its billing procedures to Deutsch. Likewise, Deutsch has not cited, and we have not found, any evidence in the record or reasonable inference therefrom that would support a finding that the Law Firm revealed matters to the opposing party in the adversary proceeding that were adverse to Deutsch's position. Considering all of the evidence in the light most favorable to Deutsch, disregarding all contrary evidence and inferences, and giving Deutsch the benefit of all reasonable inferences created by the evidence, we conclude there was no conflicting evidence of probative value as to whether the Law Firm misrepresented its billing procedures or revealed matters to the opposing party in the adversary proceeding that were adverse to Deutsch's position. See *Szczepanik*, 883 S.W.2d at 649. Accordingly, the trial court correctly directed a verdict in the Law Firm's favor as to these allegations.

### 2. Do Deutsch's breach-of-fiduciary-duty allegations impermissibly fracture his negligence claim?

 In its motion for directed verdict, the Law Firm also asserted that Deutsch had improperly fractured his negligence claim. Therefore, we must determine whether Deutsch's remaining breach-of-fiduciary-duty allegations impermissibly fracture his negligence claim. This is a difficult area of the law, and there are confusing statements in dicta in some of the cases. Nevertheless, when cases say that clients cannot divide or fracture their negligence claims against their attorneys into other claims, this does not mean that clients can sue their attorneys only for negligence. *See Burrow v. Arce,* 997 S.W.2d 229, 237–47 (Tex.1999) (holding that, although negligence claim fails if client suffers no damages, clients still may obtain fee forfeiture as remedy under their breach-of-fiduciary-duty claim, even in absence of damages); *Latham v. Castillo,* 972 S.W.2d 66, 69–70 (Tex.1998) (holding that client can assert DTPA claim against attorney, apart from negligence claim, where client alleged that attorney made affirmative misrepresentation); *Spera v. Fleming, Hovenkamp & Grayson, P.C.,* 25 S.W.3d 863, 872–73 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (holding that fact issue precluded summary judgment as to breach-of-fiduciary-duty claim, even though negligence claim failed as a matter of law); *Jampole v. Matthews,* 857 S.W.2d 57, 61–63 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (holding that, under certain circumstances, clients may assert fraud and breach-of-contract claims against their attorneys, separate from negligence claims); *Estate of Degley v. Vega,* 797 S.W.2d 299, 303–04 (Tex.App.-Corpus Christi 1990, no writ) (holding that clients may assert common-law fraud claims against their attorneys separate from their negligence claims); *but see Cuyler v. Minns,* 60 S.W.3d 209, 216 (Tex.App.-

Houston [14th Dist.] 2001, pet. denied) (indicating, in dicta, that all claims asserted by clients against their attorneys should be considered negligence claims); *Sledge v. Alsup,* 759 S.W.2d 1, 2–3 (Tex.App.-El Paso 1988, no writ) (same as *Cuyler* ).

 The rule against dividing or fracturing a negligence claim prevents legal-malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims. *See, e.g., Goffney v. Rabson,* 56 S.W.3d 186, 188–94 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). This analysis is analogous to determining whether claims are contract or DTPA claims or whether they sound in contract or tort. *See Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 13–15 (Tex. 1996); *Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493, 493–95 (Tex. 1991). If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim. *See, e.g., Goffney,* 56 S.W.3d at 190–94. If, however, the client's complaint is more appropriately classified as another claim, for example, fraud, DTPA, breach of fiduciary duty, or breach of contract, then the client can assert a claim other than negligence. *See id.* (indicating in dicta that claims for failure to disclose conflicts of interest and other breaches of duties of candor and loyalty would have stated a separate claim for breach of fiduciary duty but that this type of conduct was not alleged by plaintiffs).

After reviewing items (5)-(14) of Deutsch's breach-of-fiduciary-duty allegations [4], we conclude that the gist of these allegations is that the Law Firm did not

---

4. *See* list of fifteen breach-of-fiduciary-duty allegations on pages 187–88.

exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess. Therefore, these allegations should be pursued only as a negligence claim, and Deutsch impermissibly fractured his negligence claim by asserting these complaints as breach-of-fiduciary-duty allegations. *See id.* The trial court did not err in granting a directed verdict as to items (5)-(14).

In items (2)-(4), Deutsch complained about the Law Firm's failure to disclose and counsel Deutsch about conflicts of interest, its failure to withdraw from representing Deutsch in light of these conflicts, and its failure to advise Deutsch to retain separate counsel because of these conflicts. The gist of these complaints regarding the Law Firm's conflicts of interest was not that the Law Firm failed to exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess; rather, these complaints are appropriately classified as a breach-of-fiduciary-duty claim, independent of Deutsch's negligence claim. *See Holland v. Brown,* 66 S.W.2d 1095, 1102 (Tex.Civ. App.-Beaumont 1933, writ ref'd) (stating that attorneys owe their clients utmost good faith in their dealings with them, that attorneys owe their clients a duty to affirmatively disclose all material facts that would affect their relationship as well as legal consequences of those facts, and that breach of this duty states a claim for constructive fraud); *Sherwood v. South,* 29 S.W.2d 805, 808-9 (Tex.Civ.App.1930, writ ref'd) (holding by Texas Supreme Court that there was question for jury on client's fraud claim when client alleged attorney breached his duty of loyalty by obtaining confidential client information and using it for his own personal interest and against client's interest); *Goffney,* 56 S.W.3d at 193-94 (stating in dicta that claims for, among other things, failure to disclose conflicts of interest state separate claims for

breach of fiduciary duty against attorneys); *Jackson Law Office, P.C. v. Chappell,* 37 S.W.3d 15, 22-23 (Tex.App.-Tyler 2000, pet. denied) (stating that attorneys have fiduciary duty of full disclosure and holding that evidence of failure to disclose, misrepresentation, conflict of interest, and self-dealing supported jury's finding that attorneys breached their fiduciary duty); *Sullivan v. Bickel & Brewer,* 943 S.W.2d 477, 482-83 (Tex.App.-Dallas 1995, writ denied) (holding that client stated separate claim for fraud); *Jampole,* 857 S.W.2d at 61-63 (holding that client stated separate claim for fraud).

The dissent refers to a "word-processor-created blizzard" and notes that, in his counterclaim, Deutsch alleged that the same fifteen items constituted negligence and breach of fiduciary duty. *See post,* op. at pp. 200-01 (concurring and dissenting opinion). One might infer from these statements that Deutsch's breach-of-fiduciary-duty allegations are nothing more than a repackaged negligence claim. Though Deutsch alleged the same facts in his petition for both his negligence and breach-of-fiduciary-duty claims, this pleading practice is not determinative. The procedural rules allow a claimant to plead in the alternative. *See* Tex.R. Civ. P. 48; *Field v. AIM Management Group, Inc.,* 845 S.W.2d 469, 472 (Tex.App.-Houston [14th Dist.] 1993, no writ). When, as in this case, the evidence raises a genuine issue of material fact regarding alleged wrongful conduct that sounds in negligence as well as alleged wrongful conduct that sounds in breach of fiduciary duty, the trial court should charge the jury on both claims, regardless of any alternative pleading. *See, e.g., Burrow,* 997 S.W.2d at 232-33, 237-46 (finding that jury should decide fact issues regarding breach of fiduciary duty and negligence, even though court indicates that plaintiffs' petition com-

plained of all actionable conduct as basis for both claims). Therefore, the trial court erred to the extent it granted a directed verdict as to Deutsch's allegations concerning conflicts of interest on the basis that these allegations impermissibly fractured Deutsch's negligence claim.

**3. Did the trial court err in granting the Law Firm's motion for directed verdict as to Deutsch's claim for damages allegedly caused by the Law Firm's breaches of fiduciary duty regarding the conflicts of interest?**

In part of his first issue, Deutsch asserts the trial court erred in granting the Law Firm's motion for directed verdict as to his claim for damages allegedly caused by the Law Firm's breaches of fiduciary duty regarding the conflicts of interest. In this regard, Deutsch cites testimony from his expert witness, Keith Spickelmier. While Spickelmier did make a conclusory statement that Waddell's alleged negligence in making unauthorized statements to the bankruptcy court caused Deutsch damages, this statement was not related to the Law Firm's alleged breaches of fiduciary duty regarding conflicts of interest.

As to the conflicts of interest, Spickelmier never testified that they caused Deutsch any damages; rather, the only testimony he gave as to damages in this regard indicates that these conflicts did not cause Deutsch any damage: (1) Spickelmier acknowledged his own statement that he had not reached a conclusion as to whether Deutsch had suffered any specific amount of damages as a result of the conflicts of interest; (2) he testified that Deutsch suffered no damage as a result of the Law Firm's representation of Dan–333; (3) he is not aware of anything meaningful that happened during the time period when the Law Firm was a party to the adversary proceeding and also representing Deutsch

in the adversary proceeding; (4) Spickelmier has not quantified any amount of alleged damages that Deutsch has suffered as a result of any alleged actionable conduct of the Law Firm; and (5) he has not formed an opinion as to whether the conduct of the Law Firm caused Deutsch any damages as to his interests in Dan–333 or in Kirkwood Atrium Associates. Considering all of the evidence in the light most favorable to Deutsch, disregarding all contrary evidence and inferences, and giving Deutsch the benefit of all reasonable inferences created by the evidence, we conclude there was no conflicting evidence of probative value as to whether Deutsch suffered damages caused by the Law Firm's alleged breaches of fiduciary duty regarding the conflicts of interest. *See Szczepanik,* 883 S.W.2d at 649. Accordingly, we hold the trial court did not err in granting a directed verdict as to Deutsch's claim for damages regarding these alleged breaches of fiduciary duty.

**4. Did the trial court err in granting the Law Firm's motion for directed verdict as to Deutsch's claim for fee forfeiture based on the Law Firm's alleged breaches of fiduciary duty regarding the conflicts of interest?**

As a result of the above analysis, we are left to consider whether the trial court correctly granted a directed verdict as to Deutsch's claim for fee forfeiture based on the Law Firm's alleged breaches of fiduciary duty regarding the conflicts of interest. For fee forfeiture based on breach of fiduciary duty, the Texas Supreme Court has established the following procedure:

> Thus, when forfeiture of an attorney's fee is claimed, a trial court must determine from the parties whether factual disputes exist that must be decided by a jury *before the court can determine*

*whether a clear and serious violation of duty has occurred,* whether forfeiture is appropriate, and if so, whether all or only part of an attorney's fee should be forfeited. Such factual disputes may include, without limitation, whether or when the misconduct complained of occurred, the attorney's mental state at the time, and the existence or extent of any harm to the client. If the relevant facts are undisputed, these issues may, of course, be determined by the court as a matter of law. *Once any necessary factual disputes have been resolved,* the court must determine, based on the factors we have set out, whether the attorney's conduct was a clear and serious breach of duty to his client and whether any of the attorney's compensation should be forfeited, and if so, what amount.

*Burrow,* 997 S.W.2d at 246 (emphasis added).

■■■ *Burrow* controls our disposition of Deutsch's complaint that the trial court erred in directing a verdict on his fee-forfeiture claim based on the Law Firm's alleged breaches of fiduciary duty regarding the conflicts of interest. As to this claim, the no-damages argument fails because damages are not necessary to prevail on a fee-forfeiture claim. *See Burrow,* 997 S.W.2d at 237–40 (holding clients need not prove actual damages to obtain fee forfeiture for their attorney's breach of fiduciary duty). As to the fracturing issue, we already have concluded that these allegations do not impermissibly fracture Deutsch's negligence claim. Therefore, we must determine whether there was legally sufficient evidence of these breach-of-fiduciary-duty allegations, requiring the trial court to charge the jury as to them. We conclude that genuine issues of material fact exist as to whether the Law Firm breached its fiduciary duty, by failing to fully disclose all material facts relating to conflict-of-interest issues regarding the Law Firm's simultaneous representation of both Deutsch and another firm client, Dan–333, and whether the Law Firm should have withdrawn from its representation of Deutsch because of a conflict of interest created by the Law Firm's simultaneous representation of Dan–333 in a property-tax matter. Because there were genuine issues of material fact as to whether the Law Firm breached its fiduciary duty and as to the mental state of the attorneys in question at the time of the alleged breaches, under *Burrow,* the trial court should have charged the jury on these fact issues, separately from any negligence submission. *See Burrow,* 997 S.W.2d at 232–33, 237–46; *Spera,* 25 S.W.3d at 872–74 (holding summary judgment was improper as to breach-of-fiduciary-duty claim seeking fee forfeiture because there was fact issue regarding whether attorneys breached their fiduciary duty to disclose material facts relating to conflicts of interest, even though plaintiffs' negligence claims failed as a matter of law). Texas law allows Deutsch to assert a separate and independent claim for breach of fiduciary duty in this situation. *See Burrow,* 997 S.W.2d at 232–33, 237–46; *Spera,* 25 S.W.3d at 872–74.

In *Burrow,* the legal-malpractice plaintiffs asserted a number of claims, including negligence and breach of fiduciary duty. *See Burrow,* 997 S.W.2d at 232–33. All of the plaintiffs' claims were based on the same set of facts and circumstances. *See id.* Nonetheless, because there were genuine issues of material fact regarding the clients' claims for fee forfeiture, and because summary judgment was improper on the clients' negligence claims, the Texas Supreme Court held the trial court's summary judgment should be reversed and the jury should resolve the fact issues regarding the defendants' alleged negligence and

also those fact issues relating to the defendants' alleged breaches of fiduciary duty. *Id.* at 232–34, 237–46.

■ The Texas Supreme Court has prescribed the procedural steps for resolving this type of claim. Under *Burrow*, the jury must determine the factual issues *before* the trial court can determine whether the breach of fiduciary duty, if any, found by the jury was a clear and serious breach that merits fee forfeiture, and, if so, the extent of the forfeiture. *See Burrow*, 997 S.W.2d at 246. Because there were fact issues regarding breach of fiduciary duty and scienter, the jury—not the trial court—had to determine these fact issues. Accordingly, we conclude the trial court erred in granting a directed verdict as to Deutsch's claim for fee forfeiture based on the Law Firm's alleged breaches of fiduciary duty regarding the conflicts of interest. *See Burrow*, 997 S.W.2d at 237–46; *Szczepanik*, 883 S.W.2d at 649; *Spera*, 25 S.W.3d at 872–74.

**5. *Can this court affirm the directed verdict as to fee forfeiture on the basis that the trial court did not abuse its discretion in denying fee forfeiture?***

■ The dissent does not dispute that there was a genuine issue of material fact as to whether the Law Firm breached its fiduciary duty and, in fact, presumes the Law Firm breached its fiduciary duty.

The dissent contends that the trial court exercised its discretion to deny fee forfeiture and that this court should not find error in the directed verdict absent an abuse of discretion. *See post*, op. at pp. 200–05. To determine whether there was an abuse of discretion, the dissent asserts that this court should determine whether, "viewing all the evidence in Deutsch's favor, no reasonable trial judge could have denied fee forfeiture." *Post*, op. at p. 203. We respectfully disagree with the dissent's analysis of the conflicts because (1) the trial court never exercised its discretion to deny fee forfeiture; (2) if the trial court had done so, it would have been error; (3) this court cannot consider the dissent's discretionary ground because the Law Firm did not assert it in its motion for directed verdict; and (4) in any event, there was sufficient evidence to allow the trial court to consider, at the appropriate time, whether to award fee forfeiture.

*No Discretionary Determination on Fee Forfeiture*

■ First, in its motion for a directed verdict, the Law Firm did not ask the trial court to make a discretionary determination that, even if the Law Firm had breached its fiduciary duty, Deutsch still was not entitled to fee forfeiture.[5] Fur-

---

5. The dissent, however, concludes that the Law Firm did ask the trial court to countermand the *Burrow* holding and to grant a directed verdict as to fee forfeiture based on a discretionary determination that, even if the Law Firm had breached its fiduciary duty, Deutsch still was not entitled to fee forfeiture under *Burrow*. *See Burrow*, 997 S.W.2d at 240–46. The dissent gleans this request for relief from the following statement by the Law Firm's counsel during his motion for directed verdict (emphasis added):

Now, with regard to his fee forfeiture claim under the Arsee [sic] [*Burrow*] case admittedly he does not have to prove damages.

What he has to prove is to get a jury finding as to breach of fiduciary duty *and then it becomes a court determination.* The Arsee [sic] case sets forth certain criteria that the trial court judge and the trial court judge only can determine whether [sic] the trial fees should be forfeited in their entirety, in part or not at all.

In this part of the Law Firm's motion for directed verdict, counsel requests no relief from the trial court; rather, counsel states his view of the law in this case—that Deutsch must obtain a jury finding that the Law Firm breached its fiduciary duty before the matter becomes a trial-court determination and that

thermore, the trial court never exercised any purported discretion to deny Deutsch's fee-forfeiture claim; rather, the trial court granted the Law Firm's motion for directed verdict as to Deutsch's breach-of-fiduciary-duty claim, precluding the jury from finding breach of fiduciary duty and precluding the trial court from deciding whether to exercise its discretion to award fee forfeiture based on any jury findings on this claim. The dissent incorrectly states that it is this court's position that the trial court never ruled on the fee-forfeiture claim. That is not so. The trial court did rule on the fee-forfeiture claim— it granted a directed verdict as to the entire breach-of-fiduciary-duty claim. That interlocutory ruling merged into the trial court's final judgment and is now before us on appeal. *See H.B. Zachry Co. v. Thibodeaux*, 364 S.W.2d 192, 193 (Tex. 1963) (holding that prior interlocutory orders merge into subsequent order disposing of all remaining parties and issues, creating a final and appealable judgment); *Columbia Rio Grande Regional Hosp. v. Stover*, 17 S.W.3d 387, 391 (Tex.App.-Corpus Christi 2000, no pet.); *Exxon Corp. v. Garza*, 981 S.W.2d 415, 420 (Tex.App.-San Antonio 1998, pet. denied); *see also Dickinson v. Auto Center Mfg. Co.*, 733 F.2d 1092, 1101–02 (5th Cir.1983) (holding that trial court's interlocutory ruling on motion for directed verdict merged into final judgment and was reviewable on appeal from final judgment). If Deutsch's breach-of-fiduciary-duty claim failed as a matter of law, then the trial court did just what it should have done procedurally—it granted a directed verdict, did not charge the jury on this claim, and did not have to address whether it should exercise its discretion to

award fee forfeiture under *Burrow*. *See Burrow*, 997 S.W.2d at 246.

The issue before this court is whether a directed verdict was proper. Because there was conflicting evidence of probative value on Deutsch's claim for fee forfeiture based on breach of fiduciary duty, the trial court's directed verdict was improper in this regard, and this court must reverse and remand for jury determination of the fact issues regarding that claim. *See Szczepanik*, 883 S.W.2d at 649. As to Deutsch's fee-forfeiture claim, the dissent asserts that the trial court's directed verdict should be affirmed despite these fact issues. The dissent argues this court should affirm the directed verdict based on a review of the trial court's purported discretionary determination not to award fee forfeiture in this case.

The trial court, however, made no finding, express or implied, that fee forfeiture is not an appropriate remedy in this case. The trial court granted the Law Firm's motion for directed verdict as to Deutsch's breach-of-fiduciary-duty claim, and thus no factual issues were submitted to the jury as to this claim. Because neither the trial court nor the jury made any factual determinations regarding the breach-of-fiduciary-duty claim, there is no basis on which to imply a finding by the trial court that fee forfeiture is inappropriate under *Burrow*. *See* Tex.R. Civ. P. 279 & 299; *Burrow*, 997 S.W.2d at 246; *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441–43 (Tex.1997); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). We are aware of no authority allowing this court to affirm a directed verdict based on a discretionary ruling the trial court never made.

the trial court, at that point, would determine whether any or all of the fee should be forfeited under the criteria set forth in *Burrow*. *See Burrow*, 997 S.W.2d at 240–46. The record shows that the Law Firm's counsel sought no

relief and correctly summarized the *Burrow* case, which requires the trial court to charge the jury if there are fact issues regarding whether the Law Firm breached its fiduciary duty. *See id.*

## Any Request Would Have Been Premature

 Second, even if the Law Firm had moved for a directed verdict on the ground that the trial court should exercise its discretion to deny fee forfeiture despite the fact issues regarding breach of fiduciary duty, its efforts would have been in vain. The Texas Supreme Court has made it clear that the trial court should not determine the clear-and-serious-breach issue and whether to award fee forfeiture until *after* the jury has resolved all material fact questions regarding whether the defendant breached its fiduciary duty. *See Burrow*, 997 S.W.2d at 246 ("a trial court must determine from the parties whether factual disputes exist that must be decided by a jury before the court can determine whether a clear and serious violation of duty has occurred, whether forfeiture is appropriate, and if so, whether all or only part of an attorney's fee should be forfeited."); *Jackson Law Office, P.C.*, 37 S.W.3d at 23 (same). We are not at liberty to encroach on methodology the Texas Supreme Court has devised and adopted for fee-forfeiture claims. Though our dissenting colleague would have us take an arguably more efficient path, as an intermediate court of appeals, we must follow the Texas Supreme Court's expressions of the law and leave changes in the application of common-law rules to that higher authority. *See In the Interest of K.M.S.*, 45 Tex. Sup.Ct. J. 877, 2002 WL 1338100, at *1 (June 20, 2002); *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex.1989); *Winograd v. Willis*, 789 S.W.2d 307, 312 (Tex.App.-Houston [14th Dist.] 1990, writ denied). Applying *Burrow*, as we must, it is clear that the trial court erred by grant-

ing a directed verdict in favor of the Law Firm and not submitting to the jury Deutsch's claim for fee forfeiture based on the Law Firm's alleged breaches of fiduciary duty regarding any conflicts of interest. *See Burrow*, 997 S.W.2d at 246.

## Ground Not Specified in Motion for Directed Verdict

Third, the rules of civil procedure require that "[a] motion for directed verdict shall state the specific grounds therefor." TEX.R. CIV. P. 268. Based on the wording of this rule, one might reasonably conclude that this court may not affirm the directed verdict on a ground not specified in the motion for directed verdict. However, the Texas Supreme Court has held that the failure to specify a ground in the motion for directed verdict is not fatal if there are no fact issues raised by the evidence and the prevailing party is entitled to judgment as a matter of law. *Texas Emp. Ins. Ass'n v. Page*, 553 S.W.2d 98, 102 (Tex. 1977) (stating the failure of a motion for directed verdict to specify a ground "is not always fatal, especially if there are no fact issues raised by the evidence"); *Harvey v. Elder*, 191 S.W.2d 686, 687 (Tex.Civ.App.-San Antonio 1945, writ ref'd) (holding by the Texas Supreme Court that trial court can grant *sua sponte* directed verdict or nonspecific motion for directed verdict, as long as the prevailing party below was entitled to judgment as a matter of law); *Newman v. Link*, 866 S.W.2d 721, 725–26 (Tex.App.-Houston [14th Dist.] 1993) (stating the failure of a motion for directed verdict to specify a ground "is not fatal if there are no fact issues raised by the evidence" and citing *Page* for this proposition) [6], *writ denied*, 889 S.W.2d 288 (Tex.

---

6. The dissent incorrectly states that *Newman* stands for the proposition that "in equitable matters committed to a trial court's discretion, the rule is that we must affirm if there is

any basis in the record for doing so, whether or not the ground was expressly urged by the successful party." *See post*, op. at pp. 204–05. *Newman* does not support this proposi-

1994) (per curiam); *see also In re Price's Estate,* 375 S.W.2d 900, 904 (Tex.1964), *superseded by statute as stated in Stiles v. Res. Trust Corp.,* 867 S.W.2d 24, 26 (Tex. 1993). The evidence raised fact issues regarding Deutsch's claim for fee forfeiture based on the Law Firm's alleged breaches of fiduciary duty regarding the conflicts of interest, and the dissent's conclusion that it would not be an abuse of discretion to deny fee forfeiture is not an assertion that the Law Firm was entitled to judgment as a matter of law. Therefore, the Law Firm was required to specify this ground in its motion for directed verdict. Because the Law Firm did not move for directed verdict on this ground, we cannot affirm on this basis. *See* Tex.R. Civ. P. 268; *Texas Emp. Ins. Ass'n,* 553 S.W.2d at 102; *Newman,* 866 S.W.2d at 725–26.

*Sufficient Evidence of Clear–and–Serious Breach of Fiduciary Duty*

 Fourth, it should be noted that there was sufficient evidence from which the trial court could have concluded that the Law Firm committed a clear-and-serious breach of fiduciary duty. Under *Burrow,* if the trial court had not granted a directed verdict, and if the proceedings had progressed to that point, the trial court would have had discretion to find the Law Firm's breaches to be clear and serious based on the following considerations: (1) the gravity and timing of the violation; (2) its wilfulness; (3) its effect on the value of the attorney's work; (4) any other threatened or actual harm to the client; (5) the adequacy of other remedies; and (6) the public interest in maintaining the integrity of attorney-client relationships. *See Burrow,* 997 S.W.2d at 241–44. The determination of whether a clear-and-serious breach of fiduciary duty has occurred is a discretionary call that does not require: (1) actual damages caused by the breach; or (2) an intentional breach; or (3) inadequacy of other available remedies. *See Burrow,* 997 S.W.2d at 241–44. The dissent states that Deutsch suffered no damages [7], that the breaches were not intentional, and that "[t]he trial court could have found the conflicts were minor and of short duration." *See post,* op. at p. 203. As a matter of law, damages and an intentional breach are not required for a clear-and-serious breach to exist. *See Burrow,* 997 S.W.2d at 241–44; *Jackson Law Office, P.C.,* 37 S.W.3d at 22–23 (affirming partial fee forfeiture under *Burrow* even though the breaches of fiduciary duty did not cause damages and even though there was no indication that the breaches were intentional).

 Attorneys owe their clients a fiduciary duty of "most abundant good faith," requiring absolute perfect candor, openness and honesty, and the absence of any concealment or deception. *See Goffney,* 56

---

tion; rather *Newman* held that "[a]lthough Rule 268 requires a motion for instructed verdict to state specific grounds, the failure to so state is not fatal if there are no fact issues raised by the evidence." *Newman,* 866 S.W.2d at 725–26. Although *Newman* did involve a constructive trust, the court did not state that the equitable nature of this remedy had anything to do with its holding in this regard. *See Newman,* 866 S.W.2d at 725–26.

**7.** The dissent's statement that "the jury found no negligence by the firm caused [Deutsch] any harm" is correct; however, it could be misunderstood. *See post,* op. at p. 203. The jury failed to find that "the negligence, if any, of [the Law Firm] proximately cause[d] any injury to George Deutsch." The jury did not find that the Law Firm was free from negligence, and the jury's finding in this regard may very well have been based on Deutsch's failure to prove damages. Deutsch was unable to submit proper jury questions based on his fee-forfeiture claim because the trial court granted the Law Firm's motion for directed verdict on this claim.

S.W.3d at 193. The dissent presumes that the Law Firm breached its fiduciary duty, for example, by failing to fully disclose to Deutsch all material facts relating to conflict-of-interest issues regarding the Law Firm's simultaneous representation of Deutsch and Dan–333. In its representation of Dan–333 in a property-tax matter, the Law Firm was arguing for a low valuation of the property in question, and, at the same time, the Law Firm was representing Deutsch in the bankruptcy court and arguing for a high valuation of the same property. The conflict-of-interest issues and the client's need for full disclosure before consenting to continued representation shows that there was sufficient evidence on the issue of whether the Law Firm's alleged breaches of fiduciary duty were clear and serious to warrant consideration by the trial court if the jury were to find a breach of fiduciary duty. *See Holland,* 66 S.W.2d at 1102 (stating that attorneys owe their clients utmost good faith in their dealings with them, that attorneys owe their clients duty to affirmatively disclose all material facts which would affect their relationship as well as legal consequences of those facts, and that breach of this duty states a claim for constructive fraud); *Jackson Law Office, P.C.,* 37 S.W.3d at 22–23 (affirming partial fee forfeiture under *Burrow* based in part on attorneys' breaches of fiduciary duty to fully disclose facts relating to conflicts of interest, even though there were no damages and no apparent intentional breaches); *W.C. Turnbow Petroleum Corp. v. Fulton,* 199 S.W.2d 263, 264–65 (Tex.Civ. App.-Texarkana 1946, writ ref'd n.r.e.) (affirming fee forfeiture against attorney and stating that " 'An attorney owes to his client an undivided allegiance ... He cannot act both for his client and one whose interest is adverse to or conflicting with that of his client in the same general matter, however slight such adverse interest may be, nor is it material that the intention and motive of the attorney may have been honest.' "); *Bryant v. Lewis,* 27 S.W.2d 604, 607–8 (Tex.Civ.App.-Austin 1930, writ dism'd) (holding that attorney's failure to disclose material facts regarding conflict of interest and failure to disclose the legal consequences of those facts justified forfeiture of attorney's fee, even though attorney appeared not to have been aware of conflict and to have acted in good faith); *Condren v. Grace,* 783 F.Supp. 178, 185–87 (S.D.N.Y.1992) (finding that attorney's fee should be forfeited because of breach of fiduciary duty by failure to disclose material facts regarding conflicts of interest but also finding that plaintiff had failed to prove attorney was negligent in representing client).

For these reasons, we conclude the trial court erred when it granted a directed verdict in favor of the Law Firm as to Deutsch's claim for fee forfeiture based on the Law Firm's alleged breaches of fiduciary duty regarding the conflict-of-interest issues.

### 6. Summary

The trial court correctly granted a directed verdict against Deutsch as to his claim for damages based on breach of fiduciary duty because there was either legally insufficient evidence that these breaches occurred (items (1) and (15)) or these allegations impermissibly fractured his negligence claim (items (5)-(14)) or there was legally insufficient evidence of damages (items (2)-(4)). The trial court erred in granting a directed verdict against Deutsch as to his claim for fee forfeiture based on the alleged breaches of fiduciary duty relating to the Law Firm's conflicts of interest because there were genuine issues of material fact as to whether the Law Firm breached its fiduciary duty and as to the mental state of the attorneys in question at the time of the alleged breach-

es. *See Burrow,* 997 S.W.2d at 232–33, 237–46; *Spera,* 25 S.W.3d at 872–74. Accordingly, we overrule Deutsch's first and seventh issues to the extent Deutsch complains of the trial court's directed verdict as to his claim for damages based on breach of fiduciary duty and as to his claim for fee forfeiture, except to the extent he sought fee forfeiture based on the alleged breaches of fiduciary duty relating to the Law Firm's conflicts of interest. We sustain Deutsch's first and seventh issues as to his claim for fee forfeiture based on the alleged breaches of fiduciary duty relating to the Law Firm's conflicts of interest.

**D. Did the trial court err by refusing jury questions regarding certain alleged defenses?**

The trial court has considerable discretion to determine necessary and proper jury instructions. *Texas Workers' Comp. Ins. Fund v. Mandlbauer,* 34 S.W.3d 909, 911 (Tex.2000). When a trial court refuses to submit a requested instruction, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict. *See* Tex.R. Civ. P. 277; *Mandlbauer,* 34 S.W.3d at 911. Further, for an instruction to be proper, it must (1) assist the jury; (2) accurately state the law; and (3) find support in the pleadings and the evidence. *See* Tex.R. Civ. P. 278; *Mandlbauer,* 34 S.W.3d at 911.

In his third, fourth, and fifth issues, Deutsch asserts that, even if the trial court properly granted a directed verdict as to his breach-of-fiduciary-duty claim, it erred by refusing to submit jury questions he requested regarding his purported breach-of-contract defenses—misrepresentation, breach of contract, and breach of fiduciary duty. Deutsch devoted less than one page to the argument under these three issues. Moreover, though he cited to a portion of

the clerk's record showing that he filed forty-two proposed jury questions three days before the charge conference, he has not cited, and we have not found, any evidence in the record that the trial court considered and refused any of these forty-two questions. We find Deutsch did not preserve error based on these questions. *See Corley v. Exxon Pipeline Co.,* 821 S.W.2d 435, 437 (Tex.App.-Houston [14th Dist.] 1991, writ denied).

We note that Deutsch has included in the appendix to his appellant's brief thirty-two pages that appear to be jury questions that were marked "refused" by the trial court; however, because these documents are not part of the appellate record in this case, we may not consider them. *See Carlton v. Trinity Univ. Ins. Co.,* 32 S.W.3d 454, 458 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Even if these documents had been made part of the appellate record, we would not reach the merits of Deutsch's complaint because Deutsch has waived these issues by failing to properly brief them. *See* Tex.R.App. P. 38.1(h); *Houghton v. Port Terminal R.R. Ass'n,* 999 S.W.2d 39, 51 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Though Deutsch states in a conclusory manner that the trial court erred by refusing his questions regarding misrepresentation, breach of contract, and breach of fiduciary duty, as defenses to the Law Firm's contract claim, he does not cite or otherwise specify any refused question or questions that he alleges properly presented these purported defenses. Moreover, he cites only one case and then for an uncontroversial proposition—that certain defenses that negate a plaintiff's claim may still be asserted even if the statute of limitations bars the defendant from recovering on a claim under the same theory. Deutsch provides no analysis as to why any proposed question was substantially correct

and supported by the evidence. A party asserting error on appeal bears the burden of showing that the record supports the contention raised, and of specifying the place in the record where matters upon which he relies or of which he complains are shown. *See* TEX.R.APP. P. 38.1(h); *Houghton,* 999 S.W.2d at 51. Deutsch has failed to carry this burden and thus has waived these issues. *See* TEX.R.APP. P. 38.1(h); *Houghton,* 999 S.W.2d at 51. Accordingly, we overrule Deutsch's third, fourth, and fifth issues.

**E. Did the trial court err by granting a directed verdict as to Deutsch's claims for exemplary damages, breach of contract, and attorney's fees?**

In four remaining issues, Deutsch complains of the trial court's directed verdict against various other claims.

In his sixth issue, he complains the trial court granted a directed verdict as to his claim for exemplary damages. Deutsch did not prevail on any theory at trial and recovered no damages. Consequently, on appeal, there is no surviving tort theory as to which Deutsch might recover actual damages. Thus, Deutsch cannot recover exemplary damages. *See Twin City Fire Ins. Co. v. Davis,* 904 S.W.2d 663, 665 (Tex.1995) (parties cannot recover exemplary damages unless they first recover under an independent tort claim). We overrule Deutsch's sixth issue.

In his eighth issue, Deutsch complains of the directed verdict against his breach-of-contract claim. Deutsch pleaded the same fifteen items for breach of contract as for negligence. In his eighth issue, the only contract claim that Deutsch refers to is his claim regarding certain billing disputes with the Law Firm. The appellate record shows the trial court submitted these disputes to the jury in question one of the charge. The jury deducted the amount of a cash retainer the Law Firm had failed to apply in Deutsch's favor; otherwise, the jury found in the Law Firm's favor as to the billing dispute. Deutsch has not asserted or shown that the jury would have resolved these billing issues differently had the trial court overruled the Law Firm's directed verdict as to breach of contract. Therefore, any error in the trial court's directed verdict on the breach-of-contract claim was harmless. *See Cooper v. Lyon Fin. Servs., Inc.,* 65 S.W.3d 197, 209 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (holding any error in granting directed verdict as to one claim was harmless because the jury considered and rejected the same damages that were sought under another theory). Accordingly, we overrule Deutsch's eighth issue.

In his ninth and tenth issues, Deutsch complains of the directed verdict against his own claim for attorney's fees. Deutsch sought attorney's fees under the DTPA and under Chapter 38 of the Texas Civil Practice and Remedies Code. *See* TEX. BUS. & COM.CODE § 17.50(d); TEX. CIV. PRAC. & REM.CODE § 38.001, *et seq.* The trial court did not charge the jury on the DTPA claim, and Deutsch has not assigned any error in this regard on appeal. Because Deutsch did not prevail on a DTPA claim, he cannot recover attorney's fees under the DTPA. *See* TEX. BUS. & COM.CODE § 17.50(d); *Sears, Roebuck and Co. v. Nichols,* 819 S.W.2d 900, 908 (Tex.App.-Houston [14th Dist.] 1991, writ denied). To recover attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code, a party must (1) prevail on a claim for which attorney's fees are recoverable, and (2) recover damages. *Green International, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex.1997). Deutsch did neither. Accordingly, we overrule his ninth and tenth issues.

## IV. Conclusion

We sustain Deutsch's first and seventh issues to the extent they pertain to his claim for fee forfeiture based on alleged breaches of fiduciary duty relating to the Law Firm's conflicts of interest; otherwise, we overrule all of Deutsch's issues. While the only claim left to be resolved in this case is Deutsch's claim for fee forfeiture based on alleged breaches of fiduciary duty relating to the Law Firm's conflicts of interest, the resolution of this claim may affect the trial court's judgment that the Law Firm recover its attorney's fees from Deutsch. Therefore, we reverse the trial court's judgment and remand this case to the trial court for a jury trial on the disputed fact issues regarding this claim and for further proceedings consistent with this opinion.

BRISTER, C.J., concurring and dissenting.

SCOTT BRISTER, Chief Justice, concurring and dissenting.

The law firm of Hoover, Bax & Slovacek, L.L.P. sued its former client, George Deutsch, for more than $60,000 in unpaid fees. Naturally, he responded with a counterclaim; indeed, it was a word-processor-created blizzard that included lists of fifteen identical acts, omissions, and conflicts of interest, each of which was alleged to constitute negligence *and* breach of contract *and* breach of fiduciary duty *and* negligent misrepresentation *and* (with slightly shorter but still identical lists) DTPA *and* fraud. Mercifully for the jury, the seasoned trial judge condensed these duplicative claims into two broad-form questions, one addressing negligence and the other breach of contract. The jury

found against Deutsch on both; he challenges neither finding on appeal.

Nevertheless, the Court holds Deutsch is entitled to a second jury trial because, no matter how flimsy his fee forfeiture claim, it must be submitted to a jury if there is the least factual dispute. Given the highly discretionary nature of such claims, I do not believe the law requires this futile exercise. Thus, I respectfully dissent to parts III(B)(4)-(6) of the Court's opinion, although I fully join in the remainder.

### *The Standard of Review?*

Without any discussion, the Court applies the traditional standards for reviewing motions for directed verdict in jury trials. But fee forfeiture is not a traditional jury claim; it is "inherently equitable," and thus largely in the discretion of the court. *See Burrow v. Arce*, 997 S.W.2d 229, 246 (Tex.1999). While the jury is to decide factual disputes, the decision whether there was a clear and serious breach of duty, and whether any fees should be forfeited, is left up to the discretion of the trial court. *Id.* The Court does not explain why the standard for reviewing a directed verdict of a jury claim (in which trial judges have no discretion) should apply to a fee forfeiture claim (in which they have quite a lot).

The supreme court has not spelled out the standard of review we should employ in fee forfeiture cases.[1] But it has discussed in some detail the standard of review that applies to declaratory judgment fee actions, which involve a similar combination of jury questions (a reasonable and necessary fee) and equitable considerations (a just and equitable fee). There, the court prescribed a multi-faceted review: "the court of appeals must deter-

---

1. The court has stated only that a decision "whether to forfeit any or all of an attorney's fee is subject to review on appeal as any other legal issue." *Burrow,* 997 S.W.2d at 246. The opinion does not indicate which legal issues the court had in mind.

mine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998). Thus, while the amount awarded by the jury is reviewed for sufficiency of the evidence, the decision to grant or deny any fees at all is reviewed for an abuse of discretion. *See Hunt v. Baldwin*, 68 S.W.3d 117, 135 n. 8 (Tex. App.-Houston [14th Dist.] 2001, no pet.). As a result, it is often irrelevant whether there was some evidence to support a jury's award; equitable considerations may require a reduced fee or no fee at all.[2]

Because the issues are so similar, we should follow a similar standard of review here. As the trial court did not submit to the jury factual questions regarding the alleged conflicts of interest, we should apply the traditional standards and resolve all conflicts in the evidence in Deutsch's favor. *See Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994). But assuming those to be the facts, we then should review the trial court's judgment denying forfeiture for an abuse of discretion, setting the judgment aside only if it is clear from the record that the trial court had only one reasonable option. *See In re Nitla S.A. de C.V.*, 45 Tex. Sup.Ct. J. 571,

2002 WL 534089 (April 11, 2002); *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 29 (Tex.App.-Tyler 2000, pet. denied) (holding appellate court may find fee forfeiture order an abuse of discretion only if facts and circumstances extinguished any discretion in the matter).

The Court reads *Burrow* to require a jury trial every time fee forfeiture is alleged and there is any factual dispute, no matter how slight. But the *Burrow* court said jury submission is required only if there are factual disputes that *"must* be decided by a jury before the court can determine whether ... forfeiture is appropriate." *Id.* (emphasis added). Surely it is possible a trial judge may decide, after hearing the claimant's case, that fee forfeiture is not appropriate *even if a jury found all factual disputes in the claimant's favor.* We do the same in any number of other proceedings in which trial judges have a decision-making role.[3]

Thus, the trial judge's failure to submit fact issues to the jury should not be *per se* reversible error. The proper question for us is whether, viewing the evidence in the light most favorable to Deutsch, denial of fee forfeiture was an abuse of discretion.

### An Abuse of Discretion?

Deutsch bases his fee forfeiture claim on three conflicts of interest.[4] Viewing the

2. *See Utley v. Marathon Oil Co.*, 31 S.W.3d 274, 281 (Tex.App.-Waco 2000, no pet.) (holding that even though some evidence supported jury's fee award, trial court did not abuse its discretion in reducing jury's award by 80%); *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 843 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (holding that even though some evidence supported jury's fee award, trial court abused its discretion in granting any fee award at all).

3. *See, e.g., Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 304–05 (Tex. 1988) (holding trial judge in bench trial need not deny directed verdict and go through full

trial merely because *some* evidence supports plaintiff's claim, if trial judge does not *credit* that evidence); *Loomis Int'l, Inc. v. Rathburn*, 698 S.W.2d 465, 469 (Tex.App.-Corpus Christi 1985, no writ) (same, with respect to temporary injunction hearing); *see also Kline v. O'Quinn*, 874 S.W.2d 776, 785–86 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (affirming directed verdict because, as defendants owed no duty to plaintiff, the parties' factual disputes were immaterial).

4. Deutsch alleges a fourth conflict—that the law firm represented the bankruptcy trustee during the adversary proceeding—but he points to no evidence to support that claim.

evidence in the light most favorable to him,[5] those conflicts were:

*The adversary proceeding.* The bankruptcy trustee's adversary proceeding was originally filed against both Deutsch and the law firm, claiming both violated the automatic bankruptcy stay. The trustee voluntarily dropped the claim against the firm nine days later, before it filed an answer. During those nine days, Deutsch alleges Waddell represented both his own firm and Deutsch, thus creating a conflict of interest. Deutsch's expert admitted that nothing of consequence occurred in the litigation during those nine days.

*The Dan 333 tax matter.* Waddell admitted the conflicts check he ran within the law firm failed to include Dan 333, one of the partnerships in which Deutsch and the bankrupt parties were partners. A proper conflicts check would have disclosed that another member of the law firm was representing Dan 333 in an attempt to lower its property taxes. The bankruptcy trustee filed a motion to disqualify the law firm on this basis, at which time Waddell told Deutsch about the potential conflict, and Deutsch consented to continued representation by the firm. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. A (Vernon Supp.1998) (TEX. STATE BAR R. art. X, § 9). The motion to disqualify was denied within fourteen days of filing. Deutsch's expert could

identify no damage from the conflict, or any effect upon Waddell's representation.

*The March 8, 1994 hearing.* At a hearing in the bankruptcy court, Waddell stated that Deutsch would buy a Houston building owned by one of the other partnerships (not Dan 333) on terms that Deutsch alleges he had not approved. When the sale failed because of these discrepancies, the building was sold to someone else at a lower price, and the trustee sought the difference from Deutsch. Deutsch claims Waddell was a material witness, and should have withdrawn from representation as a result. *See* TEX. DISCIPLINARY R. PROF'L. CONDUCT 3.08(a) (requiring withdrawal if lawyer may be a witness necessary to establish an essential fact on behalf of client). When the issue was tried in Delaware, Waddell did not testify, and Deutsch was not held liable for the difference.

Deutsch first argues that every conflict of interest is serious and ought to justify fee forfeiture. But fee forfeiture is not automatic. *See Burrow,* 997 S.W.2d at 240–41. Trial courts must use discretion and consider a number of factors before deciding whether to forfeit any fees. Because we cannot substitute our judgment for the trial court's, we consider only whether the trial court reasonably could have found those factors weigh against

---

The testimony and exhibits show that a Delaware firm represented the trustee in that proceeding. It appears from the record that what Deutsch actually is arguing is that, because the appellee law firm represented Dan 333 in the ad valorem tax matter, and because the bankruptcy trustee controlled the bankrupt partners' rights in Dan 333, then the firm was representing the trustee. This is nothing more than a reiteration of the conflict relating to Dan 333.

5. Because fee forfeiture presents a mix of factual and legal issues, it is unclear whether we should limit our consideration to the evidence in his favor and discard all contrary evidence, or consider all of the evidence in his favor only as much as the record allows. *See S.V. v. R.V.,* 933 S.W.2d 1, 8 (Tex.1996). But in this case, the result is the same under either standard.

forfeiture in this case: [6]

- *Gravity and timing of the violation.* The trial court could have found the alleged conflicts were minor and of short duration. Indeed, the denial of the motion to disqualify, dismissal of the adversary proceedings against the firm, and final judgment in Deutsch's favor could have suggested that each was the result of overreaching by opposing counsel rather than under-representation by Deutsch's own.
- *Wilfulness.* During the trial, Deutsch admitted he did not believe the firm ever intended to do him any harm.
- *Effect on value of the lawyer's work.* Deutsch's expert admitted none of the conflicts appeared to have any adverse effect on the firm's representation.
- *Threatened or actual harm to the client.* Deutsch presented no evidence that he suffered any harm from the conflicts, and the jury found no negligence by the firm caused him any harm.
- *Adequacy of other remedies.* Because the legal fees in *Burrow* had already been paid, the clients needed an equitable remedy to get them back. *See Burrow*, 997 S.W.2d at 232. Here, by contrast, Deutsch had not paid; he repeatedly urged the jury to lower his fees because of the conflicts. The trial court could have found this remedy adequate, even though ultimately unsuccessful.
- *Public interest in maintaining the integrity of attorney-client relationships.* Professional standards recognize that conflicts of interest are sometimes harmless or unavoidable. *See* Tex. Disciplinary R. Prof'l Conduct 1.06(b)-(d) & 3.08(a)-(b) (providing exceptions in which conflicts of interest are permissible). The trial court could have found that fee forfeiture was not needed to discourage inadvertent errors in running a conflicts check or an opponent's disqualification motion that proves to be baseless.

Deutsch makes no argument that any of these conflicts were clear and serious other than the Dan 333 tax matter. It is true one member of the law firm was arguing for a low valuation of Dan 333's property in the tax proceeding while Waddell argued for a high valuation in the bankruptcy proceeding. But the trial court could have found this was in everyone's interest, as both Deutsch and Dan 333 stood to benefit from lower taxes and a higher sales price. Surely a trial court could find fee forfeiture is not required in every case when an attorney is hired to keep taxes low but valuations for other purposes high.

It is not our role to condone or censure the law firm's work in this case; as an appellate court, our job is not to decide the facts or whether fee forfeiture was appropriate. Our only role is to decide whether, viewing all the evidence in Deutsch's favor, no reasonable trial judge could have denied fee forfeiture. Because that is not the case, I would hold the trial court did not abuse its discretion.

### *No Proper Objection?*

The Court never disagrees with this analysis of the alleged conflicts; instead, it holds that the law firm never moved for directed verdict on this ground. But the record shows the contrary. At the close of all evidence and immediately before closing arguments, the law firm moved for directed verdict in an oral motion that (due to the plethora of Deutsch's claims and the thoroughness of the law firm's counsel)

---

6. *Burrow*, 997 S.W.2d at 243–44.

extends over more than forty pages. In the middle of that motion, the firm's counsel stated:

> Now, with regard to his fee forfeiture claim under the *Arce* case, admittedly he does not have to prove damages. What he has to prove is to get a jury finding as to breach of fiduciary duty and then it becomes a court determination. The *Arce* case sets forth certain criteria that the trial court judge *and the trial court judge only* can determine whether the trial fees should be forfeited in their entirety, in part, *or not at all.*

(emphasis added). Some time later, the trial court granted the motion as to all claims except negligence and breach of contract.

The Court says this does not count as a motion for directed verdict because the law firm's attorney "requests no relief from the trial court," and merely "states his view of the law in this case." *Ante* at 193. Realistically, trial lawyers do not state abstract views of the law in the middle of a motion, with the charge prepared, and a jury waiting out in the hall for closing arguments. Read in its context—in the middle of a motion for directed verdict—the last sentence asks the trial judge not to submit anything to the jury regarding fee forfeiture, but to deny it based on the *Burrow* criteria alone.

Having said that, I do not think we can reverse even if the law firm's motion was not specific enough. In equitable matters committed to a trial court's discretion, the rule is that we must affirm if there is any basis in the record for doing so, whether or not the ground was expressly urged by the successful party. *See, e.g., Newman v. Link,* 866 S.W.2d 721, 725–26 (Tex.App.-Houston [14th Dist.] 1993), *writ denied,* 889 S.W.2d 288 (Tex.1994) (per curiam) (affirming directed verdict imposing constructive trust even though movant stated no liability grounds as a basis).[7]

The Court reaches an opposite conclusion by way of two errors. First, the Court overstates the law governing motions for directed verdict generally. It is *not* true that a motion for directed verdict can only be affirmed on grounds stated in the motion:

> Although Rule 268, Texas Rules of Civil Procedure, provides that a motion for instructed verdict shall state the specific grounds therefor, *failure to so state is not always fatal, especially* if there are no fact issues raised by the evidence.

*Texas Employers Ins. Ass'n v. Page,* 553 S.W.2d 98, 102 (Tex.1977) (emphasis added). The word "especially" indicates that the absence of fact issues is a *special* case in which grounds do not have to be stated, but by no means the *only* case. Indeed, a trial court may direct a verdict *sua sponte*—without a motion mentioning *any* grounds at all.[8]

Second, the Court again overlooks the equitable nature of fee forfeiture proceedings. If a matter is committed to the trial court's discretion, it cannot be limited to

---

**7.** *See also In re Gamble,* 71 S.W.3d 313, 325 (Tex.2002) (Baker, J., concurring) (arguing that court based its analysis in mandamus on ground petitioner did not allege in lower courts). Texas criminal and civil law appear to agree in this respect. *See Hailey v. State,* 87 S.W.3d 118, 2002 WL 31116654, *3 (Tex. Crim.App.2002) (holding appellate courts may affirm but cannot reverse trial court's decision on legal theory not presented below).

**8.** *See Guerra v. Datapoint Corp.,* 956 S.W.2d 653, 657 (Tex.App.-San Antonio 1997, no writ); *Valero Eastex Pipeline Co. v. Jarvis,* 926 S.W.2d 789, 792 (Tex.App.-Tyler 1996, writ denied); *see also Gonzales v. Willis,* 995 S.W.2d 729, 740 (Tex.App.-San Antonio 1999, no pet.) (stating directed verdict must be affirmed on ground disclosed by record even though not embodied in motion).

the timing or reasons selected by either of the parties.

A directed verdict is not like a summary judgment; it comes only after the plaintiff's evidence is closed. Plaintiffs present their evidence as they wish; no one must give them notice of what they must prove. When they rest, omissions cannot be cured by further evidence—it is too late for that. If the case is lost, jurors do not have to sit through the rest of a trial simply because the defendant hasn't noticed yet. I would hold we cannot avoid applying the proper standard of review simply because the law firm did not state it precisely enough.

### No Ruling?

Finally, the Court says the trial judge never exercised his discretion to deny Deutsch's fee forfeiture claim. It is true that neither his oral directed verdict nor the written final judgment explicitly mentioned the fee forfeiture claim. But there is a presumption that applies here: when a trial judge signs a judgment after a conventional trial on the merits, we must presume that he "intended to, and did, dispose of ... all issues made by the pleadings between the parties." *North East Indep. School Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex.1966). Without question, the trial judge could have initially ruled one way on the directed verdict, and then later reconsidered and ruled differently. *See Conrey v. McGehee*, 473 S.W.2d 617, 620 (Tex.App.-Houston [14th Dist.] 1971, writ ref'd n.r.e.) (affirming directed verdict that was granted only after jury could not reach a verdict).

The Court holds the trial judge never exercised any discretion regarding fee forfeiture because he *said* he was granting a directed verdict on all fiduciary claims based on limitations. Of course, applying that reasoning, we would have to say the trial judge never granted a directed verdict based on the "fracturing" and "no damages" grounds either. The majority and I disagree whether the law firm's motion was necessary or sufficient; we should not be disagreeing on whether the trial judge's oral pronouncement is somehow binding in this appeal.

### Conclusion

I agree with the Court that Deutsch is not entitled to avoid his legal bill by any remedy at law; my only disagreement is whether equity requires something more. Attorneys must exercise "the punctilio of an honor" toward clients. *See Lopez*, 22 S.W.3d at 866 (Gonzalez, J., concurring and dissenting) (quoting Justice Cardozo in *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (1928)). But even attorneys who do will sometimes have dissatisfied clients, lawsuits and legal fees being what they are. Adding a fee forfeiture claim to every legal malpractice or fee collection suit is the work of a moment. If the Court is correct that *Burrow* requires a jury trial over every scintilla of a punctilio, Texas judges and jurors will soon be occupied with little else.